IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 26, 2019

## RONNIE WILSON v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Jefferson County**
**No. 12701     O. Duane Slone, Judge**

_____

### No. E2018-01362-CCA-R3-PC

_____

The Petitioner, Ronnie Wilson, appeals from the Jefferson County Circuit Court's denial of his petition for post-conviction relief. The Petitioner contends that he received ineffective assistance from his trial counsel because trial counsel (1) made no effort to exclude a prior aggravated robbery conviction that the State sought to use as impeachment evidence; (2) failed to explain the concept of criminal responsibility to the Petitioner; and (3) was intoxicated when he met with the Petitioner prior to trial. Discerning no error, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and NORMA MCGEE OGLE, JJ., joined.

Eve Charlesworth, Jefferson City, Tennessee, for the appellant, Ronnie Wilson.

Herbert H. Slatery III, Attorney General and Reporter; Garrett D. Ward, Assistant Attorney General; James B. Dunn, District Attorney General; and Jeremy D. Ball, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
## FACTUAL BACKGROUND

The Petitioner was convicted by a jury of aggravated robbery and conspiracy to commit aggravated robbery. State v. Ronnie Peter Wilson, III, No. E2013-00576-CCA-R3-CD, 2013 WL 6858273, at *1 (Tenn. Crim. App. Dec. 30, 2013), perm. app. denied (Tenn. June 20, 2014). The trial court imposed a total effective sentence of twenty years to be served at 100 percent. Id. This court affirmed the Petitioner's convictions on direct appeal. Id. On June 20, 2014, our supreme court declined to review this court's decision.

The evidence at trial established that the Petitioner and three co-defendants developed a plan to steal drugs and money from the victim and her grandson. Wilson, 2013 WL 6858273, at *1-2. The victim testified that the Petitioner entered her home, demanded drugs and money, put a knife to her throat, and took her purse. Id. at *1. The victim's grandson then chased the Petitioner and his co-defendants out of the house with a baseball bat. Id. The victim's grandson struck the Petitioner with the bat and knocked out a gold capped tooth. Id. The Petitioner wrestled the bat away from the victim's grandson and struck him with it before he and his co-defendants fled. Id. Both the victim and her grandson identified the Petitioner at trial. Id.

All three of the Petitioner's co-defendants testified at trial about his involvement in planning and committing the robbery. Wilson, 2013 WL 6858273, at *2. One of the co-defendants had given a previous statement to police that the Petitioner put a knife to the victim's throat. Id. The Petitioner gave a statement to police admitting his involvement in planning and committing the robbery. Id. He admitted that the gold capped tooth found at the victim's residence was his. Id. He also stated that he saw one of his co-defendants throw a knife out of the car as they fled from the victim's residence. Id. A witness saw "a young black man . . . hanging out the window" of a car and throw a knife. Id. at *1. The witness was able to later help the police locate the knife. Id.

The Petitioner filed a timely pro se petition for post-conviction relief. Counsel was appointed to represent the Petitioner in this matter and filed three amended petitions for post-conviction relief. As pertinent to our review, the Petitioner alleged that trial counsel was ineffective for making no effort to exclude a prior aggravated robbery conviction that the State sought to use as impeachment evidence, for failing to explain the concept of criminal responsibility to the Petitioner, and for being intoxicated when he met with the Petitioner prior to trial.[1]

The Petitioner admitted that he met several times with trial counsel prior to trial. The Petitioner also admitted that trial counsel reviewed and explained the evidence provided by the State during discovery. This included the Petitioner's statement to the police and the statements of the witnesses and co-defendants. However, the Petitioner claimed that trial counsel never explained the trial process to him or how the evidence would be used at trial. The Petitioner further claimed that he and trial counsel did not discuss trial strategy "until [the] last minute."

The Petitioner admitted that he had prior felony convictions for delivery of a counterfeit controlled substance, attempted aggravated assault, automobile burglary, and aggravated robbery. The Petitioner claimed that trial counsel never explained to him how

---

[1] This opinion will focus solely on the issues raised in the Petitioner's brief. All other issues have been waived. See Tenn. R. App. P. 36(a).

his prior convictions could be used at trial if he testified. The Petitioner admitted that he was not sure if he ever intended to testify at trial. However, the Petitioner claimed that he told trial counsel that he did not want to testify at trial specifically because of his prior aggravated robbery conviction. The Petitioner recalled that trial counsel made no attempt to exclude his prior aggravated robbery conviction. The Petitioner claimed that he would have testified at trial despite his other prior felony convictions if his prior aggravated robbery conviction had been excluded.

The Petitioner testified that he wanted to go to trial to prove that he "didn't have a knife" so that he would be convicted of robbery instead of aggravated robbery. The Petitioner insisted that he did not have a knife during the robbery and that he went to trial because he "didn't want to admit to having a knife or take a charge for having a knife when [he] didn't." The Petitioner claimed that trial counsel never explained the concept of criminal responsibility to him. The Petitioner claimed that he would have accepted a plea agreement if trial counsel had explained that he could be convicted of aggravated robbery as long as the State proved that one of the co-defendants used a knife, even if he did not personally use one.

The Petitioner claimed that trial counsel smelled of "white liquor, either gin or vodka" during their pretrial meetings. The Petitioner stated that he was unsure if being intoxicated had affected trial counsel's performance because trial counsel "wasn't that good in the first place." In addition, the Petitioner asked to represent himself the day before trial due to his lack of confidence in trial counsel.

Trial counsel testified that he met with the Petitioner on multiple occasions, that he hired a private investigator, that he talked to the detective investigating the case and the prosecutor, and that he reviewed the discovery materials. Trial counsel testified that the evidence against the Petitioner was strong and that he attempted to negotiate a plea agreement. The State offered an agreement with an eight-year sentence, but trial counsel recalled that the trial court rejected the plea agreement. Trial counsel testified that the Petitioner rejected the State's next offer of an agreement with a ten-year sentence. Trial counsel recalled that the Petitioner stated that "if he was going to jail, a jury or the judge would give him that sentence."

Trial counsel testified that the Petitioner's prior aggravated robbery conviction was initially listed as an aggravated burglary conviction. It was not until about a month before the trial that he and the prosecutor learned that the conviction was for aggravated robbery. Trial counsel explained that he did not file a motion to exclude the conviction when he learned that it was for aggravated robbery because the Petitioner had already decided not to testify at trial due to his "terrible criminal history." Trial counsel admitted that the prosecutor filed a motion the day of trial to use the aggravated robbery conviction

as impeachment evidence if the Petitioner testified. However, trial counsel testified that the motion was never heard because the Petitioner had already decided not to testify.

Trial counsel testified that he reviewed the discovery material with the Petitioner. Trial counsel claimed that the Petitioner stated that he was involved in the robbery and that a knife was used during the robbery but that the Petitioner did not say who used the knife. Trial counsel testified that he explained the concept of criminal responsibility to the Petitioner and that the Petitioner would still be guilty of aggravated robbery if a co-defendant had used a knife instead of the Petitioner.

Trial counsel denied that he ever met with the Petitioner while intoxicated. Trial counsel admitted that if he had met with the Petitioner in the evening, he may have had a beer with dinner but that he would not have been intoxicated and denied that he had ever consumed "white liquor" before meeting with the Petitioner.

Captain Ricky Oakes of the Jefferson County Sheriff's Office testified that an incident report would be filed if someone showed up to the jail intoxicated and that there was no such report filed involving trial counsel.

The post-conviction court denied the petition for post-conviction relief. The post-conviction court concluded that trial counsel's performance was not deficient and that the Petitioner had failed to show that he was prejudiced by trial counsel's performance given the overwhelming evidence of the Petitioner's guilt. Specifically, the post-conviction court found that even if the aggravated robbery conviction had been excluded as impeachment evidence, the Petitioner would still have been subject to cross-examination about "his own statement" and would have had "to explain the other witnesses' testimony." The post-conviction court also accredited trial counsel's testimony that he explained the concept of criminal responsibility to the Petitioner "in a sufficient manner." The post-conviction court found that it was "of the opinion that [the Petitioner] did smell a strong odor of alcohol about [trial counsel] during [the Petitioner's] meetings with [trial counsel.]" Nonetheless, the post-conviction court accredited the testimony of trial counsel and Captain Oakes that trial counsel "was not intoxicated or impaired to the extent that he could not perform his duties as counsel while meeting with [the Petitioner] or otherwise in preparing for his defense."

## ANALYSIS

The Petitioner contends that he received ineffective assistance from trial counsel. The Petitioner argues that trial counsel was ineffective for not seeking to exclude his prior aggravated robbery conviction, for not explaining the concept of criminal responsibility to him, and for being intoxicated at pretrial meetings with him. The State responds that the post-conviction court did not err in denying the petition.

-4-

The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); see Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). On appeal, we are bound by the post-conviction court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. Id. However, we review the post-conviction court's application of the law to its factual findings de novo with no presumption of correctness. Id. at 457.

Post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. Criminal defendants are constitutionally guaranteed the right to effective assistance of counsel. Dellinger, 279 S.W.3d at 293 (citing U.S. Const. amend. VI; Cuyler v. Sullivan, 446 U.S. 335, 344 (1980)). When a claim of ineffective assistance of counsel is made under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993).

Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness," despite the fact that reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 688-89. Prejudice requires proof of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

The post-conviction court found that the Petitioner failed to establish his factual allegations by clear and convincing evidence. The Petitioner claimed that he would have testified at trial if his prior aggravated robbery conviction had been excluded as impeachment evidence. Trial counsel testified that the aggravated robbery conviction was mistakenly recorded as an aggravated burglary conviction. Trial counsel further testified that the Petitioner had already decided not to testify when trial counsel and the prosecutor learned that the conviction was for aggravated robbery. Trial counsel

-5-

explained that this was due to the Petitioner's "terrible criminal history," which included several other felony convictions in addition to the aggravated robbery conviction. As such, trial counsel was not deficient for failing to challenge the admissibility of the prior aggravated robbery conviction.

The Petitioner also claimed that he would have accepted a plea agreement had trial counsel explained the concept of criminal responsibility to him. However, trial counsel testified that the Petitioner rejected the State's offer of an agreement with a ten-year sentence and that the Petitioner stated that "if he was going to jail, a jury or the judge would give him that sentence." The post-conviction court accredited trial counsel's testimony that he explained the concept of criminal responsibility to the Petitioner. The evidence does not preponderate against the post-conviction court's finding.

The Petitioner also claimed that trial counsel smelled of "white liquor" when trial counsel met with him prior to trial. Trial counsel denied ever consuming "white liquor" before meeting with the Petitioner. Trial counsel admitted that if he had met with the Petitioner in the evening, he may have had a beer with dinner, but denied that he was ever intoxicated when he met with the Petitioner. Captain Oakes testified that an incident report would be filed if someone showed up to the jail intoxicated and that there was no such report filed involving trial counsel. While the post-conviction court was "of the opinion that [the Petitioner] did smell a strong odor of alcohol about [trial counsel] during [the Petitioner's] meetings with [trial counsel,]" the post-conviction court nonetheless accredited the testimony of trial counsel and Captain Oakes that trial counsel "was not intoxicated or impaired to the extent that he could not perform his duties as counsel while meeting with [the Petitioner] or otherwise in preparing for his defense." The evidence does not preponderate against the post-conviction court's finding. Accordingly, we conclude that the post-conviction court did not err in denying the petition for post-conviction relief.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE